UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------x
JANET TINGLING,

                    Appellant,

                                        MEMORANDUM & ORDER
          -against-                     19-CV-2307(JS)

UNITED STATES DEPARTMENT OF
EDUCATION, AMERICAN EDUCATION
SERVICES, GREAT LAKES EDUCATIONAL
LOAN SERVICES, INC., NELNET, INC.,
NAVIENT CORPORATION, and EDUCATIONAL
CREDIT MANAGEMENT CORPORATION,

                    Appellees.
---------------------------------x
APPEARANCES
For Appellant:       Janet Tingling, <u>pro se</u>
                     60 Carnegie Avenue
                     Elmont, New York 11003

For Appellees:
Educational Credit
Management
Corporation          Kenneth L. Baum, Esq.
                     Law Offices of Kenneth L. Baum LLC
                     167 Main Street
                     Hackensack, New Jersey 07601

United States
Department of
Education            Mary M. Dickman, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     610 Federal Plaza, 5th Floor
                     Central Islip, New York 11722

SEYBERT, District Judge:

          Currently pending before the Court is an appeal filed by

Janet Tingling ("Debtor" or "Tingling"), appearing <u>pro se</u>, from an

order of the United States Bankruptcy Court for the Eastern

District of New York ("Bankruptcy Court"), Hon. Alan S. Trust, dated April 15, 2019, denying Debtor's request to discharge her educational loans pursuant to 11 U.S.C. § 523(a)(8). For the reasons stated below, the Bankruptcy Court's determination that the loans are non-dischargeable is AFFIRMED.

## BACKGROUND

The following facts are drawn from the Complaint and the documents incorporated by reference therein. Additionally, the Court takes judicial notice of the documents filed in Debtor's bankruptcy case. See Newman v. Educ. Credit Mgmt. Corp., No. 08-CV-3871, 2009 WL 1875778, at *1 (E.D.N.Y. June 26, 2009); Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC, No. 07-CV-8139, 2008 WL 3925175, at *1 n. 2 (S.D.N.Y. Aug. 26, 2008) (court can take judicial notice of the public filings in a bankruptcy proceeding).[1]

---

[1] The documents filed in the underlying Bankruptcy case 16-71800 "Bankr." can be found at D.E. 10, at ECF pp. 1-119. The documents cited to in the underlying Adversary Proceeding 16-08113 "ADV. PR." are docketed in this Court at D.E. 6; however, the Court has used the PACER System to access the Adversary Proceeding documents and uses the docket entry numbers generated by the PACER System. References to the docket in the adversary proceeding are cited as "ADV. PR., D.E. [docket entry number]." References to the docket in the instant appeal are cited as "D.E. [docket entry number]." For consistency, the Court will refer to page numbers provided by the court's CM/ECF system.

I. Bankruptcy Proceedings

On April 25, 2016, Debtor, represented by counsel, filed for relief under Chapter 7 of the United States Code (the "Bankruptcy Code") and received a general discharge on August 9, 2016. (Bankr. 16-71800, D.E. 10-1, Bankr. Pet., at ECF pp. 9-15; Appellant Br., D.E. 4, at 2.) On August 5, 2016, Debtor filed an adversary proceeding by filing a complaint against the United States Department of Education ("DOE"), American Education Services ("AES"), Great Lakes Educational Loan Services, Inc. ("Great Lakes"), Nelnet, Inc. ("Nelnet"), and Navient Corporation ("Navient") (collectively, "Defendants") seeking a determination that her educational loans are dischargeable pursuant to 11 U.S.C. § 523(a)(8).[2] (ADV. PR., D.E. 1.)

On February 6, 2017, Debtor's attorney filed a motion to withdraw as counsel (DOE Br., D.E. 11, at 8 (citing ADV. PR., D.E. 19)) which the Bankruptcy Court granted on April 28, 2017 (DOE Br. at 8; ADV. PR., D.E. 25.) On April 17, 2017, Debtor filed a motion to seal the case and a motion for a default judgment against the DOE for not responding to a request for the production of documents. (ADV. PR., D.E. 22, 23, 24.) On June 21, 2017, the

---

[2] Navient agreed to discharge Debtor's liability as to the loan it held and in turn Tingling stipulated to the dismissal of Navient as a defendant which was approved by the Bankruptcy Court on October 18, 2018. (Hr'g Tr., D.E. 4-3, at 6; ADV. PR., D.E. 10.) Great Lakes did not appear in the adversary proceeding.

Bankruptcy Court granted Educational Credit Management Corporation ("ECMC")'s motion to intervene in the adversary proceeding, as the assignee of eight of the educational loans. (ADV. PR. Consent Order, D.E. 30.) The Bankruptcy Court denied Debtor's default motion on September 25, 2018. (ADV. PR. Order Denying Default Motion, D.E. 54.)

After mediation efforts failed, the Bankruptcy Court ordered the parties to file a joint pretrial memorandum. (DOE Br. at 9 (citing ADV. PR., D.E. 33, 36).) On July 27, 2018, Defendants filed a joint pretrial memorandum and Debtor filed a separate pretrial memorandum. (ADV. PR. Defs. Joint Pretrial Memo., D.E. 41; DOE Br. at 9.) Following the Bankruptcy Court's subsequent order, the parties conferred and filed a joint pretrial memorandum containing hand written notations made during their meeting. (DOE Br. at 9; ADV. PR. Revised Joint Pretrial Memo., D.E. 44.) On July 31, 2018, the Bankruptcy Court directed the parties to submit a clean version of the joint pretrial memorandum by August 10, 2018. (ADV. PR. Am. Pretrial Scheduling Order, D.E. 43.) Debtor did not consent to the draft of the clean version but filed her own "joint pretrial memo" on August 10, 2018. (ADV. PR. Tingling Pretrial Memo., D.E. 47.)

Following a September 25, 2018 status conference, the Bankruptcy Court directed ECMC to prepare a revised joint pretrial memorandum setting forth both stipulated facts and, separately,

questions of fact to be determined by the Bankruptcy Court at trial. (ADV. PR. Further Am. Pretrial Scheduling Order, D.E. 54.) Tingling submitted an amended "joint" pretrial memorandum along with her affidavit of direct testimony on September 27, 2019. (ADV. PR. Tingling Aff. and Am. Joint Pretrial Memo., D.E. 56.) ECMC filed the revised joint pretrial memorandum on October 9, 2018. (ADV. PR. Final Joint Pretrial Order ("JPTO"), D.E. 61.) Ultimately, Defendants' joint pretrial memorandum was entered by Order, dated October 9, 2018, as the JPTO governing the trial (see ADV. PR. JPTO), and Tingling's amended pretrial memorandum was specifically excluded from admission at trial (Trial Tr., D.E. 4-2, 56:5-14 (referencing Tingling Aff.)).

    A.   <u>Joint Pretrial Order</u>

      The following are stipulated facts in the JPTO.[3] At the time of the filing of the JPTO, Debtor was fifty-two (52) years of age, unmarried, and had no dependents. (ADV. PR. JPTO ¶¶ 8, 9.) She had no medical or psychological disabilities. (ADV. PR. JPTO ¶ 10.) Debtor holds B.S. and M.S. degrees in Biology, an M.B.A. in Healthcare Management, and a D.B.A. (Doctorate of Business Administration) degree. (ADV. PR. JPTO ¶¶ 11, 12.) At the time of the filing of the JPTO, Debtor was attending school to obtain her PhD in Healthcare Management. (ADV. PR. JPTO ¶ 6.) She has

---

[3] References to specific paragraphs of the JPTO are from Section IV of the JPTO labeled, "Stipulated Facts."

been employed by Montefiore Medical Center as a Clinical Research Associate since 2014. (ADV. PR. JPTO ¶ 13.) Debtor received an adjusted gross income of approximately $48,320 in 2016 and $50,234 in 2017. (ADV. PR. JPTO ¶ 14.) Debtor's payroll deductions included contributions toward a 403(b) retirement plan and life insurance premiums. (ADV. PR. JPTO ¶ 15.) She claimed tax deductions for educational tuition in her tax returns for years 2013 through 2017. (ADV. PR. JPTO ¶ 21.) Debtor received federal tax refunds of $2,697 for 2013; $4,264 for 2014; $4,264 for 2015; $4,291 for 2016; and $4,530 for 2017. (ADV. PR. JPTO ¶ 22.) She did not use any portion of her tax returns to repay her outstanding student loans. (ADV. PR. JPTO ¶ 22.) She reported charitable donations in the amount of $2,407 for 2015; $2,462 for 2016; and $2,644 for 2017. (ADV. PR. JPTO ¶ 23.)

Debtor lives in a house that she co-owns with her sister and they each pay fifty percent of the monthly household expenses. (ADV. PR. JPTO ¶¶ 16, 17.) In December 2016, the house was assessed at $298,800 and as of July 2018, the outstanding mortgage on the house was $152,827.92. (ADV. PR. JPTO ¶¶ 18, 19.) Debtor's monthly expenses include, among other things, $149 per month for bundled cable, telephone and internet service. (ADV. PR. JPTO ¶ 20.)

ECMC, which acts as a federal student loan guarantor in the Federal Family Education Loan Program ("FEELP"), holds an

interest in eight of Debtor's unpaid student loans (the "ECMC loans"). (ADV. PR. JPTO ¶¶ 1, 2.) These ECMC loans were used to finance Debtor's education at Adelphi University and Ross University School of Medicine. (ADV. PR. JPTO ¶ 3.) As of March 28, 2017, the outstanding balance of the ECMC loans, including principal, interest, fees, and costs was approximately $59,112.10 (accruing an interest rate of 2.65% *per annum*, or $4.23 *per diem* in the aggregate). (ADV. PR. JPTO ¶ 4.) Debtor is eligible to enter the William D. Ford Direct Loan Consolidation Program (the "Ford Program") or participate in other options under FFELP in order to achieve greater flexibility in repaying the ECMC loans. (ADV. PR. JPTO ¶ 24.) If Debtor participates in the Ford Program her monthly payment under the income-based repayment program ("IBR") would be $380, based on her reported household adjusted gross income. (ADV. PR. JPTO ¶ 25.) If she participates in the Revised Pay As You Earn Plan ("REPAYE"), her monthly payment would be $253.33 for twenty-five years based on her reported gross income. (ADV. PR. JPTO ¶ 26.) ECMC advised Debtor of these loan repayment options but as of the date of the filing of the JPTO, she declined to participate in any of them. (ADV. PR. JPTO ¶ 26.)

The DOE loans include, among others, a number of Stafford Loans issued to Debtor between 1996 and 1999. (ADV. PR. JPTO ¶ 5.) There was a question of fact as to the number of loans possessed by the DOE and the amount owed on the loans. (ADV. PR. JPTO, § V,

Questions of Fact, ¶¶ 4, 7, 8.)  The DOE placed Debtor in deferred status based upon her enrollment in a program to obtain her PhD. (ADV. PR. JPTO ¶ 6.)  As of the date of the JPTO, Debtor had not made any payments toward any of the DOE loans.  (ADV. PR. JPTO ¶ 7.)

      B.   <u>Trial Testimony</u>

On October 11, 2018, the Bankruptcy Court held a trial to consider whether or not Debtor's educational loans owed to ECMC and the DOE were dischargeable pursuant to 11 U.S.C. § 523(a)(8). (<u>See</u> Trial Tr. at 1.)  Tingling testified and the Court admitted her affidavit into evidence with the following exceptions.  The Bankruptcy Court excluded testimony regarding prior disputes concerning the production of documents and its denial of Tingling's motion for a default judgment against the DOE.  (Trial Tr. 52:1-8.)  Over Debtor's objections, the Bankruptcy Court refused to reconsider the JPTO which stipulated that ECMC owned eight of Debtor's student loans.  (Trial Tr. 52:9-16; 104:14-106:20.)  The Bankruptcy Court also declined to hear testimony referencing Tingling's diagnosis of a tumor.  (Trial Tr. 52:24-53:23.)  It noted that Tingling had waived her right to raise a medical condition as an issue in the adversary proceeding and had also stipulated that she had no medical or psychological disabilities in the JPTO.  (Trial Tr. 53:6-21.)  Finally, the Bankruptcy Court excluded the pretrial memorandum Tingling attached to her

affidavit which contained a number of statements that were not ultimately included in the final JPTO. (Trial Tr. 55:11-22.)

Tingling testified that she obtained loans for her education at Queens College from 1996 until 2001, and Davenport University from 2009 through 2014. (Trial Tr. 56:23-57:21.) She testified that her take home pay was $2,773 every month after taxes, 403(b) contribution and loan repayment, and health insurance. (Trial Tr. 69:4; 100:19-101:3.) Tingling stated that she pays half of the $2,426.37 monthly mortgage which includes real estate taxes. (Trial Tr. 71:10-22.) She also testified that she pays half of the electric, water and ADT bills. (Trial Tr. 71: 23-25; 77:7-9.)

Tingling claimed that she did not receive legitimate documentation from ECMC to establish proof of ownership of the loans. (Trial Tr. 104:3-109:3.) She testified that the ECMC loans were tied up with the Sallie Mae loans and that she made very small payments to Sallie Mae while in medical school beginning in 2014 or 2016 for two years. (Trial Tr. 75:13-23; 87:19-89:24.) The Court noted that the JPTO did not address the issue of whether or not the Debtor had made any payments on the ECMC loans to which ECMC responded that there is no evidence in the record showing that she made any payments on the loans at issue. (Trial Tr. 115:8-18.)

In regard to the DOE loans, Tingling disputed the amount owed arguing that there was a lack of evidence of the existence of some of the loans. (Trial Tr. 107:10-111:16.) She stated that she never made any payments on the DOE loans. (Trial Tr. 78:4-20.) DOE witness Rhoda Terry ("Terry"), a loan analyst testified that the DOE possessed the promissory notes for twenty of the twenty-five loans. (Trial Tr. 12:8-13; 26:24-25.) According to Terry's testimony, Tingling was eligible to enter into an income-based repayment program for the DOE loans. (Trial Tr. 40:25-41:3.) Based on the outstanding DOE loan amount and Tingling's reported income on her 2017 tax return, Terry determined that Tingling would be required to pay approximately $400 per month. (Trial Tr. 41:4-18.) Terry also testified that if Tingling consolidated all of her student loans, she would be eligible for the REPAYE program, requiring that she pay approximately $266 per month. (Trial Tr. 40:4-18.)

At the close of trial, the Bankruptcy Court acknowledged that there was "more than substantial evidence in the record that th[e] debts exist", that Debtor did not "have a good faith challenge that [she] didn't borrow most of this money, [and] use it for educational purposes," and that "the Defendants [ ] are owed the money." (Trial Tr. 129:16-22.) The Bankruptcy Court noted that "[m]ost of [Debtor's] battle with the Defendants has been the amount that might be owed," (Trial Tr. 127:5-8) and

therefore it needed to decide "whether or not [it] needs to actually liquidate the amount of the claims of ECMC and the [DOE], or simply determine that the legitimate loans that they did make are non-dischargeable or dischargeable"[4] (Trial Tr. 126:24-127:3).

C.  Bankruptcy Court's Decision

The Bankruptcy Court explained its Ruling at a Conference on February 26, 2019 (the "Ruling Conference"). (See Hr'g Tr.)  It determined that the Debtor was not entitled to discharge her student loans pursuant to 11 U.S.C. § 523(a)(8) because she failed to satisfy any one of the three requisite elements of the Second Circuit's test pursuant to Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987) (per curiam), aff'g 46 B.R. 752 (S.D.N.Y. 1985).  More specifically, the Bankruptcy Court found that under Brunner, Debtor failed to meet her burden of proving: (1) that she cannot maintain a minimal standard of living for herself, (2) "that additional circumstances exist indicating that [her] state of affairs is likely to persist for a significant portion of the repayment period of the loans," and (3) that she made good-faith efforts to repay the ECMC loans or the DOE loans.  (Hr'g Tr. 13:4-20:13.)

---

[4] In closing, the DOE stated that it would waive collection of five of the twenty-five loans for which they were unable to locate promissory notes.  (Trial Tr. 116:17-21.)  This would bring the outstanding balance of $206,000 to $181,000.  (Trial Tr. 117:3-10.)

Before stating its Ruling, the Bankruptcy Court restated the relevant facts as stipulated to in the JPTO. (Hr'g Tr. 8:19-12:8.) Additionally, in applying the Brunner test, the Bankruptcy Court made findings of fact based on the testimony of the witnesses and the exhibits entered into evidence at trial. (Hr'g Tr. 12:9-16; 14:14-20:8.)

In regard to the first Brunner factor, the Bankruptcy Court found that "Debtor [ ] failed to undertake steps to improve her overall financial condition and reduce her expenses." (Hr'g Tr. 14:14-17.) More specifically, it found that Debtor has "financial flexibility" but has decided not to utilize the substantial equity in her home to reduce her monthly expenses and/or to repay any of the loans. (Hr'g Tr. 14:20-25.) It further noted that Debtor's income exceeded the 2018 Federal Poverty Guidelines. (Hr'g Tr. 15:5-8.) The Bankruptcy Court therefore concluded that based on Debtor's current income and expenses, she failed to meet her burden of proving the inability to maintain a minimal standard of living while repaying the ECMC loans and the DOE loans simultaneously. (Hr'g Tr. 15:8-10; 19:4-9.)

In regard to the second factor of the Brunner test, the Bankruptcy Court found that the Debtor should be able to continue to maintain the level of income that she enjoyed for several years prior to filing for bankruptcy. (Hr'g Tr. 15:21-24; 19:14-18.) It based this conclusion on the Debtor's relatively young age;

good health, including the absence of any mental or physical existing impairments; work skills; numerous educational degrees and marketability; and lack of obligation to pay dependents support. (Hr'g Tr. 15:25-16:5; 19:18-24.) The Bankruptcy Court also pointed out that it was the ECMC loans, in part, that enabled Debtor to obtain her advanced degrees by financing her education. (Hr'g Tr. at 16.) Thus, it determined that Debtor failed to meet her burden of proof with respect to the second factor. (Hr'g Tr. 16:10-12; 19:14-20.)

Finally, the Bankruptcy Court found that Debtor failed to satisfy Brunner's third factor because of her lack of good-faith efforts to repay the loans. (Hr'g Tr. 16:13-17:3; 20:2-8.) The Bankruptcy Court determined that Debtor's decision "not to avail herself of any of the[ ] repayment options" available for the ECMC loans precluded a finding of good faith effort to repay the loans. (Hr'g Tr. 16:21-17:3.) The Bankruptcy Court further found that Debtor failed to meet her burden of proof to show good faith efforts towards repaying or negotiating an alternative payment of the DOE loans. (Hr'g Tr. 20:2-8.) It noted that the DOE loans were used to finance the Debtor's education at Queens College, Nassau Community College, and Davenport University. (Hr'g Tr. 18:1-3.) The Bankruptcy Court further noted that, though the DOE was unable to locate one or more promissory notes, the outstanding balance for the notes they did possess was

approximately 181,000.[5]  (Hr'g Tr. 18:4-11.)  The Bankruptcy Court acknowledged that the DOE loans were in deferment while Debtor was enrolled in various higher educational programs but that her deferred status ended on March 4, 2018, almost two years after Debtor had filed for bankruptcy.  (Hr'g Tr. 18:12-19.)  It further noted that Debtor had not made any payments on the DOE loans and that the DOE had not sought collection as Debtor had filed for bankruptcy.  (Hr'g Tr. 18:20-25.)  Therefore, the Bankruptcy Court concluded that Debtor failed to meet her burden of proof to show good faith by negotiating an alternative payment plan on the DOE loans.  (Hr'g Tr. 20:2-8.)

        In sum, the Bankruptcy Court found that the Brunner test was not satisfied as Debtor failed to meet her burden of proof with respect to any of its three requisite elements and accordingly, that the loans were not dischargeable.  (Hr'g Tr. 19:2-4.)  Final judgment was entered for Defendants on April 15, 2019.  (ADV. PR. Final J., D.E. 68.)  Debtor timely filed her notice of appeal on April 19, 2019, seeking reversal of the Bankruptcy Court's order.

---

[5] The Bankruptcy Court's decision appears to contain a typographical error in stating that the balance was $281,000. (See Hr'g Tr. 18:11.)

DISCUSSION

I.  Standard of Review

        This Court has jurisdiction to hear appeals from
decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a),
which provides in relevant part that "[t]he district courts of the
United States shall have jurisdiction to hear appeals . . . from
final judgments, orders, and decrees; . . . [and,] with leave of
the court, from other interlocutory orders and decrees . . . of
bankruptcy judges . . . ."  28 U.S.C. § 158(a).  On review of a
bankruptcy court's order, a district court functions as an
appellate court and may affirm, modify, reverse or remand with
instructions for further proceedings.  Sumpter v. DPH Holdings
Corp. (In re DPH Holdings Corp.), 468 B.R. 603, 611 (S.D.N.Y.
2012).

        Whether discharging a debtor's student loan would impose
an "undue hardship" under 11 U.S.C. § 523(a)(8) requires a
conclusion regarding the legal effect of the bankruptcy court's
findings and is thus properly subject to this Court's review.
Brunner, 831 F.2d at 396.  In reviewing the bankruptcy court's
decision, a district court does not have to agree with every
conclusion reached but can affirm the decision on "any ground
supported in the record."  In re Coronet Capital Co., No. 94-CV-
1187, 1995 WL 429494, at *3 (S.D.N.Y. July 20, 1995) (citing Roby

v. Corp. of Lloyd's, 996 F.2d 1353, 1359 (2d Cir. 1983), cert.
denied, 510 U.S. 945, 114 S. Ct. 385, 126 L. Ed. 2d 333 (1993).

A bankruptcy court's "[f]indings of fact, whether based
on oral or documentary evidence, shall not be set aside unless
clearly erroneous." In re Artha Mgmt., Inc., 91 F.3d 326, 328 (2d
Cir. 1996) (internal quotation marks and citation omitted); see
also In re Momentum Mfg. Co., 25 F.3d 1132, 1136 (2d Cir. 1994).
"A finding of fact is clearly erroneous when, although there is
evidence to support it, the reviewing court on the entire evidence
is left with the definite and firm conviction that a mistake has
been committed." Robbins Int'l, Inc. v. Robbins MBW Corp. (In re
Robbins Int'l, Inc.), 275 B.R. 456, 464-65 (S.D.N.Y. 2002)
(internal quotation marks and citation omitted). "Factual
findings must be upheld if plausible in light of the record viewed
in its entirety." Id. (internal quotation marks and citation
omitted). A bankruptcy court's legal conclusions are reviewed de
novo. See In re Momentum Mfg. Co., 25 F.3d at 1136.

Finally, discovery rulings and evidentiary exclusions
are reviewable under an abuse of discretion standard. See
Rockstone Capital LLC v. Metal, 508 B.R. 552, 558 (E.D.N.Y. 2014)
(discovery rulings); In re Bernard L. Madoff Inv. Sec., LLC, 605
B.R. 570, 582 (S.D.N.Y. 2019) (citing Manley v. AmBase Corp., 337
F.3d 237, 247 (2d Cir. 2003) (evidentiary exclusions). A trial
court's determination that certain facts or issues must be excluded

from trial on the basis of a pretrial order is reviewed for abuse of discretion. Laguna v. Am. Exp. Isbrandtsen Lines, Inc., 439 F.2d 97, 101-02 (2d Cir. 1971). A trial court abuses its discretion when "(1) its decision rests on an error of law (such as the application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision--though not necessarily the product of a legal error or a clearly erroneous factual finding--cannot be located within the range of permissible decisions." Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir. 2001) (footnotes omitted).

## II.  Issues on Appeal

The Debtor challenges the Bankruptcy Court's determination that her DOE and ECMC loans are non-dischargeable under 11 U.S.C. § 523(a)(8). In support of this contention, Debtor claims that the Bankruptcy Court's final judgment is based on fraudulent loan documents, insufficient and missing evidence, and procedural errors. (See Appellant Br. at 1-18; Appellant Reply Br., D.E. 16, at 5.) The majority of Debtor's briefs are devoted to challenging various discovery-related and evidentiary rulings of the Bankruptcy Court (see Appellant Br. at 1-18); the issue of the dischargeability of the educational loans is discussed in just two and a half pages of her twenty-three-page opening brief. (Appellant Br. at 19-21.)

Specifically, Debtor makes the following arguments: the Bankruptcy Court erred in admitting the Defendants' revised joint pretrial memorandum while denying admission of her own (Appellant Br. at 17-18); the Bankruptcy Court's denial of her motion for a default judgment against the DOE for failing to timely respond to discovery requests was prejudicial (Appellant Br. at 7-9); it was error for the Bankruptcy Court to grant ECMC's motion to intervene as she was coerced into conceding that ECMC was in fact the owner of the assigned loans (Appellant Br. At 16-17); and, personal information not covered under the redaction requirement should be protected and de-identified in all public documents that are not sealed[6] (Appellant Br. at 18).

In regard to the dischargeability of her educational debt, Tingling makes the following arguments: the Bankruptcy Court erred in not considering her recently diagnosed tumor in its application of the Brunner test (Appellant Br. at 19); she made good-faith efforts to repay her Sallie Mae loans by making monthly payments of $100-$150 for approximately two years while employed and requested a forbearance and deferment when she was unable to

---

[6] Debtor also contends that non-defendant Sallie Mae and Defendant Great Lakes violated the automatic stay during the bankruptcy proceeding by pursuing collection efforts in violation of the Fair Debt Collection Practices Act ("FDCPA"). (Appellant Br. at 15.)  However, the Court declines to address this issue as Sallie Mae is not a party to the underlying bankruptcy and Great Lakes, though a named Defendant, did not appear in the adversary proceeding.

make such payments (Appellants Br. at 20); and, participation in the Ford Program would result in a tax liability that would subject her social security benefits to garnishment leaving her in a worse situation (Appellant Br. at 21).

III. Analysis

The Court will address Debtor's discovery-related and evidentiary issues before it turns to the dischargeability of her educational debt. As noted supra, the Court reviews such rulings for abuse of discretion. See Rockstone Capital LLC, 508 B.R. at 558.

A. The JPTO

First, Debtor contends that the Bankruptcy Court erred when it denied admission of her revised pretrial memorandum but accepted Defendants' revised version which ultimately became the Bankruptcy Court's JPTO. (Appellant Br. at 17-18.) After reviewing the record, the Court finds that there was no abuse of discretion in the Bankruptcy Court's rulings pertaining to the admission of the JPTO.

Pursuant to Federal Rule of Civil Procedure 16(d), made applicable to the Bankruptcy Court by Federal Rule of Bankruptcy Procedure 7016, a pretrial order "supersede[s] all prior pleadings and control[s] the subsequent course of the action." Rockwell Int'l Corp. v. United States, 549 U.S. 457, 474, 127 S.Ct. 1397, 167 L. Ed. 2d 190 (2007) (internal quotation marks and citations

omitted).  "A bankruptcy court has broad discretion to preserve the integrity of a pretrial order, and . . . an appellate court generally should not interfere with a trial court's decision to admit or exclude evidence based on its interpretation of its own pretrial order."  Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur), 737 F.3d 814, 819 (1st Cir. 2013) (internal quotation marks and citation omitted); see also Santrayll v. Burrell, No. 91-CV-3166, 1998 WL 24375, at *7-8 (S.D.N.Y. Jan. 22, 1998) ("'Motions to reopen or to modify a pretrial order are addressed to the sound discretion of the trial judge.'") (quoting Bradford Trust Co. v. Merrill Lynch Fierce, Fenner, and Smith, Inc., 805 F.2d 49, 52 (2d Cir. 1986))).

In the instant case, the JPTO entered by the Bankruptcy Court on October 9, 2018 was the subject of much dispute among the parties.  (Trial Tr. 53:10-18.)  As noted, after numerous failed attempts at collaborating on a pretrial memorandum, and multiple hearings before the Bankruptcy Court, the parties were directed to file a single version of a revised joint pretrial memorandum. (ADV. PR. Am. Pretrial Scheduling Order, D.E. 43.)  Declining to consent to the Defendants' version, Debtor filed her own version of the revised "joint" pretrial memorandum and a motion requesting that the Bankruptcy Court accept her proposed facts and argument. (ADV. PR. Tingling Pretrial Memo.; ADV. PR. Motion, D.E. 48.) Notably, Tingling's version of the "joint" pretrial memorandum

challenged the chain of ownership of the ECMC loans but did acknowledge the existence of the eight loans. (ADV. PR. Tingling Pretrial Memo.) Ultimately, the Bankruptcy Court entered Defendants' revised pretrial memorandum as the JPTO governing the trial. (See ADV. PR. JPTO.) It contained stipulated facts the parties had previously agreed to and numerous questions of fact and questions of law to be determined at trial that had been raised by Tingling's "joint" pretrial memorandum. (ADV. PR. JPTO.)

        The Court upholds the Bankruptcy Court's "broad discretion to preserve the integrity" of its pretrial order. In re Levasseur, 737 F.3d at 819 (finding no abuse of discretion where bankruptcy court granted defendant's motion to strike a portion of debtor's pretrial memorandum) (internal quotation marks and citation omitted). The Court notes that "for pre-trial procedures to continue as viable mechanisms of court efficiency, appellate courts must exercise minimal interference with trial court discretion in matters such as the modification of its orders." Ramirez Pomales v. Becton Dickinson & Co., S.A., 839 F.2d 1, 3 (1st Cir. 1988) (citing Syracuse Broad. Corp. v. Newhouse, 295 F.2d 269, 274 (2d Cir. 1961)). Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion in admitting the JPTO and precluding Debtor's version.[7]

---

[7] Because the Court finds that the Bankruptcy Court did not abuse its discretion with regard to admission of the JPTO, the Court

B.  Motion for a Default Judgment

Next, Tingling contends that the Bankruptcy Court erred when it denied her motion for a default judgment against the DOE for not responding to discovery requests in a timely manner. (See Appellant Br. at 5-10.)  The Court finds that the Bankruptcy Court did not abuse its discretion in denying Debtor's motion.

The decision to grant or deny a motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure is within the trial court's discretion.  See Reilly v. Natwest Mkts. Grp., Inc., 181 F.3d 253, 271 (2d Cir. 1999) (affirming denial of default motion despite defendant's failure to produce certain files in discovery).  Furthermore, "[a] plaintiff is not entitled to default judgment as a matter of right, merely because a party has failed to appear or respond."  LG Funding, LLC v. Fla. Tilt, Inc., No. 15-CV-0631, 2015 WL 4390453, at *2 (E.D.N.Y. July 15, 2015) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).  "The dispositions

---

declines to address Debtor's numerous challenges to the facts as stipulated in the JPTO related to the validity and ownership of the federal education loans.  (See Appellant Br. at 3-6, 10-14; Appellant Reply Br. at 2-3, 5, 9; JPTO ¶¶ 2-5.)  Additionally, it appears that Debtor raises a statute of limitations defense claiming that the educational loans became due more than six years ago.  (Appellant Br. at 3, 20.)  However, pursuant to the Higher Education Technical Amendments of 1991 ("HETA"), 20 U.S.C. § 1091a, actions to recover on defaulted student loans are not subject to statutes of limitations.  See United States v. Whitaker, No. 09-CV-2983, 2011 WL 5856482, at *1 n. 4 (E.D.N.Y. Nov. 21, 2011).

of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993). Accordingly, as the Bankruptcy Court was in the best position to evaluate the circumstances of the case, including the good faith of the parties, this Court will not disrupt its ruling denying Debtor's motion for default judgment.

C. <u>Motion to Intervene</u>

Tingling claims that she did not knowingly consent to the Bankruptcy Court's order authorizing ECMC to intervene as guarantor of eight of the educational loans. (Appellant Br. at 16; Appellant Reply Br. at 3-4.) Debtor's challenge to ECMC's intervention in the bankruptcy proceeding is without merit.

On June 21, 2017, the Bankruptcy Court executed a consent order authorizing ECMC to intervene in the adversary proceeding pursuant to Federal Rule of Civil Procedure 24(a) and (b). (ADV. PR. Consent Order.) By executing the consent order and agreeing to ECMS's intervention, Debtor waived her right to challenge ECMS's intervention. <u>See</u> <u>Harker v. Troutman (In re Troutman Enters.,</u> <u>Inc.</u>), 286 F.3d 359, 363 (6th Cir. 2002) (holding "[i]ntervention is a procedural hurdle, rather than a jurisdictional requirement, and as such, can be waived," and finding where the Trustee failed

to lodge a timely intervention objection, he affirmatively consented to an agreed upon Order, and thereby waived his objection); In Re Appl. of the Akron Beacon Journal, No. 94- CV-1402, 1995 WL 234710, at *3-4 (S.D.N.Y. April 20, 1995) (citing Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 294 (2d Cir. 1979) (holding that defendant's failure to challenge the government's standing resulted in a waiver of any objections to the government's permissive intervention under Rule 24(b)). Thus, as Debtor consented to ECMS's intervention, she is precluded from challenging it on appeal.

D.    Motion to Seal

Finally, Debtor claims that her "safety and future employment" are being compromised and seeks to have "personal information not covered under the redaction requirement such as drivers Lic#, address, email, name, and phone # be protected and de-identified in all public documents that are not sealed." (Appellant Br. at 18) (emphasis omitted).

On April 17, 2017, Debtor moved to seal the adversary proceeding (ADV. PR. Motion to Seal, D.E. 22), but the Bankruptcy Court never ruled on that motion. However, at trial, the Bankruptcy Court did provide limited protection to Debtor's personal information pursuant to Federal Rule of Bankruptcy Procedure 9037. (Trial Tr. 6:18-7:20.)

The Supreme Court has explained, "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon v. Warner Comm., Inc., 435 U.S. 589, 599, 98 S. Ct. 1306, 1313, 55 L. Ed. 2d 570 (1978). Therefore, the Court finds that the Bankruptcy Court properly exercised its discretion in taking reasonable protective measures of Debtor's information.

E.    Dischargeability Under 11 U.S.C. § 523(a)(8)

"Generally, a debtor who seeks relief under the Bankruptcy Code cannot have student loan debt discharged. However, pursuant to 11 U.S.C. § 523(a)(8), a student loan can be discharged if repayment of the debt will impose an undue hardship on the debtor and the debtor's dependents." Williams v. N.Y. State Higher Educ. Servs. Corp., 296 B.R. 298, 302 (S.D.N.Y. 2003) (internal quotation marks omitted), aff'd, 84 F. App'x 158 (2d Cir. 2004); see also Easterling v. Collecto, Inc., 692 F.3d 229, 231-32 (2d Cir. 2012). Congress enacted 11 U.S.C. § 523(a)(8) ("Section 523(a)(8)") in light of "evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers." In re Renshaw, 222 F.3d 82, 87 (2d Cir. 2000). "[Section] 523(a)(8) exhibits a 'clear congressional intent . . . to make the discharge of student loans more difficult than that of other

nonexcepted debt . . . .'" <u>Traversa v. Educ. Credit Mgmt. Corp.</u> <u>(In re Traversa)</u>, 444 F. App'x 472, 474 (2d Cir. 2011) (summary order), <u>cert. denied</u>, 568 U.S. 817, 133 S.Ct. 135, 184 L.Ed.2d 29 (2012) (quoting <u>Brunner</u>, 831 F.2d at 396 (The debtor bears the burden of proof to show undue hardship by a preponderance of the evidence).

        The Second Circuit adopted a three-part test to be applied in determining whether a student loan is dischargeable pursuant to Section 523(a)(8) on the basis of "undue hardship." <u>Brunner</u>, 831 F.2d at 396. Discharge is permissible only if a court finds: (1) "that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." <u>See</u> <u>id.</u> If any one of the three <u>Brunner</u> requirements is not met, "the bankruptcy court's inquiry must end there, with a finding of no dischargeability." <u>Williams</u>, 296 B.R. at 302 (citing <u>Pa. Higher Educ. Assistance Agency v. Faish</u> (<u>In re Faish</u>), 72 F.3d 298, 306 (3d Cir. 1995)).

        In determining whether the three-pronged <u>Brunner</u> test is satisfied courts consider multiple factors, "including the

debtor's gross income, age, health, dependents, and marital status." Id.  The test makes clear that it imposes a heavy burden on the debtor seeking discharge of student debt.  See, e.g., In re L.K., 351 B.R. 45, 52 (Bankr. E.D.N.Y. 2006).  "Discharge based on undue hardship is reserved for extreme circumstances where a debtor is living in poverty or near poverty with little possibility of supplemental income." Williams, 296 B.R. at 303.

### 1. Application of Brunner

Applying the Brunner test, the Bankruptcy Court determined that Tingling failed to satisfy any one of the three requisite factors, and therefore denied her request for an undue hardship discharge of her student loans. (See ADV. PR. Final J.) As the Court finds that the Bankruptcy Court's determination was not based on clearly erroneous factual findings or on an erroneous view of the law, Tingling's appeal is without merit.

### a. Debtor can Maintain a Minimal Standard of Living

Tingling does not satisfy the first Brunner factor because the undisputed facts establish that her income and expenses will allow her to make loan repayments while maintaining a "minimal" standard of living. Brunner, 831 F.2d at 396.

To satisfy this first factor, "[a] debtor must demonstrate financial circumstances that [go] beyond the garden-variety financial hardship that most debtors experience." Jean-Baptiste v. Educ. Credit Mgmt. Corp., (In re Jean-Baptiste), 584

B.R. 574, 587 (Bankr. E.D.N.Y. 2018) (internal quotation marks and citation omitted). In evaluating this factor, courts consider "household income and the expenses necessary to meet a debtor's basic needs, such as food, shelter, clothing, transportation and medical treatment, and assess whether a debtor has sought to maximize income while minimizing certain discretionary expenses." Id. (citing In re Pincus, 280 B.R. 303, 318 (Bankr. S.D.N.Y. 2002)); see also Williams, 296 B.R. at 303 (finding no undue hardship where debtor was not living in impoverished conditions); In re Faish, 72 F.3d at 306 (affirming district court finding that student loan debt was non-dischargeable where debtor with one dependent and a gross yearly salary of $27,000 failed to show that she could not maintain a minimal standard of living).

Debtor has not met this burden. Though Tingling may face difficulty repaying her student loans, the undisputed facts establish that she can maintain a minimal standard of living. Debtor's salary has continuously increased since the beginning of her employment at Montefiore in 2014, and she has received substantial tax refunds each year. (Trial Tr. 63:9-24; ADV. PR. JPTO ¶ 22.) Though Debtor now claims a $59 monthly shortfall after expenses without the student loan payment (Appellant Br. at 19), this alone is insufficient under Brunner. See Perkins v. Pa. Higher Educ. Assistance Agency (In re Perkins), 318 B.R. 300, 305-07 (Bankr. M.D.N.C. 2004) (stating that whether a debtor has

minimized her expenses "requires the court to examine the reasonableness of the expenses listed in the Plaintiff's budget"); In re Pincus, 280 B.R. at 318 (finding debtor failed to meet burden with respect to the first Brunner factor despite negative monthly cash flow where his monthly expenditures on items such as cable, telephone and transportation were not reasonable). Debtor's monthly budget was based on post retirement contributions and includes expenses such as life insurance, cable, cell phone, and transportation that have been considered unnecessary for a minimal standard of living. (Appellant Br. at 19; ADV. PR. JPTO ¶¶ 15, 20.) See In re Perkins, 318 B.R. 305 (finding the debtor could maintain minimal standard of living by eliminating unnecessary expenses); In re Pobiner, 309 B.R. 405, 417 (Bankr. E.D.N.Y. 2004) (characterizing voluntary 401(k) contributions, life insurance, internet access, and premium cable channels as "luxuries" which demonstrated that debtor had failed to minimize his expenses for purposes of undue hardship inquiry).

Finally, the poverty guidelines issued by the United States Department of Health and Human Services, effective January 13, 2018, list income of $12,140 as the guideline for a single-person household. (See ADV. PR. JPTO ¶ 28.) Therefore, Debtor's annual salary of $50,000 is more than four times the poverty level and thus well beyond meeting the "minimal" standard of living requirement. See In re N.M. v. Educ. Credit Mgmt. Corp., 325 B.R.

507, 509-10 (Bankr. W.D.N.Y. 2005) (finding no undue hardship where debtor's income was more than two-and-one-half times the poverty level for a debtor with no dependents).  Thus, the Bankruptcy Court reasonably found that her situation was not "so dire" and "likely to persist for so long that [she] could not maintain a minimal standard of living."  (Trial Tr. 122:6-11.)  This finding is supported by substantial evidence and was not clearly erroneous.

### b. There is No Evidence of an Exceptional Circumstance

With regard to the second Brunner factor, the Bankruptcy Court correctly concluded that Debtor failed to present evidence from which a reasonable finder of fact could conclude by a preponderance of the evidence that there were additional, exceptional circumstances indicating "a total incapacity now and in the future to pay [her] debts for reasons not within [her] control."  In re Brunner, 46 B.R. at 758 (internal quotation marks and citation omitted).

Debtor asserts that her "job and health prospects indicate that [her] state of affairs is likely to persist for a significant portion of the repayment period of the [ ] [d]ebt."  (Appellant Br. at 20.)  She claims that she has "never earned a net income of more than $2,773.38 per month," and that she has "about a decade or less of work life remaining based on current health status."  (Appellant Br. at 20.)  Tingling claims that her

"financial circumstances are not reasonably likely to change in the future to enable [her] to have the ability to otherwise repay the [s]tudent [l]oan [d]ebt because of added medical expenses, a static base salary, and the lack of advanced experience needed for higher paying jobs."  (Appellant Br. at 20.)

The record does not support Debtor's contentions.  In determining whether a debtor has met the second Brunner factor, courts consider the debtor's job skills, age, health, the number of working years remaining, and whether the debtor has maximized her income potential.  See In re Traversa, 444 F. App'x at 474-75.  "[T]he additional circumstances element [of the Brunner test] sets a high standard of proof."  Educ. Credit Mgmt. Corp. v. Curiston, 351 B.R. 22, 29 (D. Conn. 2006).  Courts typically find this second factor satisfied under such extreme circumstances as severe illness, disability, or an unusually large number of dependents.  See Brunner, 46 B.R. at 755; Davis v. Educ. Credit Mgmt. Corp. (In re Davis), 373 B.R. 241, 249-50 (W.D.N.Y. 2007) (Brunner's second factor is "a demanding requirement and necessitates that a certainty of hopelessness exists that the debtor will not be able to repay the student loans.") (internal quotation marks and citation omitted).

Here, Debtor presented no evidence of any exceptional circumstances that would limit her future ability to earn a living, support herself, and repay her loans.  At the time of the JPTO,

Debtor was fifty-two years of age, single with no dependents, resided in a house with her sister, and was gainfully employed. (ADV. PR. JPTO ¶¶ 8, 9, 13, 16.) Notably, she possesses both B.S. and M.S. degrees in Biology, an M.B.A. in Healthcare Management, and a D.B.A. (Doctorate in Business Administration), making her marketability high. (ADV. PR. JPTO ¶¶ 11, 12.) In fact, the very loans she is seeking to discharge provided Debtor with the educational ability to maintain and even further her income. (See ADV. PR. JPTO ¶¶ 3, 6, 11, 12.)

Significantly, Debtor maintained that she was in good health until trial, when she argued for the first time that her ability to work in the future was questionable based on a recent tumor diagnosis. (Trial Tr. 42:21-53:23; 56:6-9.) However, the Bankruptcy Court noted that Debtor had affirmatively waived on the record her right to raise a medical condition as an issue in the adversary proceeding, and also stipulated to the fact that she had no medical or psychological disabilities. (Trial Tr. 53:3-23.) "At a minimum, [ ], a borrower seeking an 'undue hardship' discharge must provide corroborative evidence that he had an impairment that prevents him from earning enough to repay his student loans, and that the impairment is likely to persist well into the future." In re Norasteh, 311 B.R. 671, 678 (Bank. S.D.N.Y. 2004) (finding debtor failed to sustain burden where he did not offer any medical reports to corroborate a persistent

impairment); see also In re Traversa, 444 F. App'x at 475 (noting absence of evidence of medical condition in record supported finding that debtor had failed to satisfy second Brunner factor); In re Pobiner, 309 B.R. at 419 (finding lack of corroborating evidence precluded finding that debtor suffered from "any medical condition which would impact his ability to earn a living over a significant portion of the repayment periods of the student loans"). Thus, having waived raising a medical issue as an exceptional circumstance in the adversary proceeding, and there being no evidence in the record of any medical condition, Debtor is precluded from doing so now.[8]

Accordingly, the Bankruptcy Court's determination that Debtor failed to satisfy the second requisite factor of Brunner was correct.

### c. Debtor has not Demonstrated Good-Faith Efforts to Repay the Student Loans

As to the final Brunner factor, the Bankruptcy Court did not err in concluding that Debtor failed to make "good faith efforts to repay [her] loans." See Brunner, 831 F.2d at 396. Good faith is measured by the debtor's "'efforts to obtain employment, maximize income, and minimize expenses.'" Educ. Credit Mgmt. Corp.

---

[8] Debtor's contention that she did not submit medical records for fear of Defendants' gaining access to her personal information (Appellant Br. at 17; Appellant Reply Br. at 5) does not change the Court's analysis.

v. Frushour (In re Frushour), 433 F.3d 393, 402 (4th Cir. 2005) (quoting O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn), 339 F.3d 559, 564 (7th Cir. 2003); see also In re Pobiner, 309 B.R. at 420. A debtor's failure to diligently pursue repayment options is considered when applying the good faith requirement set forth in Brunner. In re Pobiner, 309 B.R. at 421; In re Frushour, 433 F.3d at 402 ("The debtor's effort to seek out loan consolidation options that make the debt less onerous is an important component of the good-faith inquiry.").

The Bankruptcy Court correctly found that Tingling failed to show good-faith because she has not shown the requisite effort to repay her student loans. Though she claims to have made several minimal payments on her "Sallie Mae" loans (Appellant Br. at 16), she failed to offer any proof at trial to support this contention.[9] (Trial Tr. 115:8-18.) Furthermore, as to the ECMC loans, the Debtor declined the opportunity to enter into various repayment options, including but not limited to the Ford Program. (Hr'g Tr. 16:13-24.) Though Debtor asserts that her participation in the Ford Program would still result in undue hardship due to "tax liability that would subject the debtor's social security

---

[9] Debtor refers to "Sallie Mae" loans, however, Sallie Mae is not a defendant in this proceeding. The Court notes that it is possible at some point that Sallie Mae was the servicer of the loans. (See Trial Tr. 114:17-25.)

benefits to garnishment," (Appellant Br. at 21), "the potential downstream tax consequences of entering a loan forgiveness program [are] not relevant to [the undue hardship] analysis." In re Lozada, 604 B.R. 427, 437 (S.D.N.Y. 2019).

As for the DOE loans, Debtor requested and was granted a deferment on those loans while she attended school to earn her PhD. (ADV. PR. JPTO ¶ 6.) Though her deferred status ended in March 2018, as of the date of the Bankruptcy Court's decision, Debtor made no payments on any of the DOE loans nor made any efforts to negotiate an alternative payment plan.[10] (Hr'g Tr. 20:2-8.) See In re L.K., 351 B.R. 45, 54-55 (Bankr. E.D.N.Y. 2006) (finding no good faith where debtor sought deferments but did not attempt to renegotiate the repayment terms of her loans or avail herself of the Ford Program); In re Pobiner, 309 B.R. at 421 (same). Accordingly, the Court finds that the Bankruptcy Court did not err in finding that Debtor failed to satisfy the third Brunner factor.

In sum, the Bankruptcy Court's findings of fact were not clearly erroneous, and it did not err as a matter of law in finding

---

[10] Debtor disputes the amount owed on the DOE loans. However, for purposes of the adversary proceeding, the Bankruptcy Court only needed to determine whether the Debtor's loans were dischargeable. See Williams, 296 B.R. at 303. ("a bankruptcy court is not required to determine the full amount due to the creditors during adversary proceedings concerning the dischargeability of student loans.")

that Debtor was precluded from discharging her student loan debt under Section 523(a)(8) as she failed to carry her burden on all three of the requisite <u>Brunner</u> factors.  Accordingly, the Court AFFIRMS the Bankruptcy Court's determination that the educational debt is non-dischargeable.

## CONCLUSION

The Bankruptcy order appealed from is AFFIRMED and Debtor's appeal is DISMISSED.  The Clerk of the Court is directed to mail a copy of this Order to the <u>pro</u> <u>se</u> Debtor and mark the case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED:  January __30__, 2020
        Central Islip, New York